Marshall P. SAFIR and Sapphire Steamship Lines, Inc., Plaintiffs,

v.

Andrew GIBSON, Acting Maritime Administrator, Maritime Administration, United States Department of Commerce, et al., Defendants.

No. 68 C 643.

United States District Court, E. D. New York.

June 22, 1971.

See also 417 F.2d 972, 432 F.2d 137.

Isadore B. Hurwitz, New York City, for plaintiffs.

Arnold & Porter, Washington, D. C., Barrett, Knapp, Smith & Shapiro, New York City, Kurrus & Jacobi, Galland, Kharasch, Calkins & Brown, Washington, D. C., Foley, Hoag & Eliot, Boston, Mass., Bergson, Borkland, Margolis & Adler, Kominers, Fort, Schlefer, Farmer & Boyer, Washington, D. C., Dills & Schelker, Kirlin, Campbell & Keating, Louis E. Greco, Admiralty & Shipping Section, Department of Justice, New York City, for defendants.

MEMORANDUM incorporating FINDINGS OF FACT and ORDER

DOOLING, District Judge.

Plaintiffs move for an injunction *pendente lite,* against the Maritime Administration's disbursing to the de-

fendant AGAFBO carriers any part of the $80,000,000 appropriated by the Second Supplemental Appropriation Act, 1971, for the fiscal year ended June 30, 1971 (P.L. 92–18, 85 Stat. 40, approved May 25, 1971). Of the $80,000,-000 about half, $40,300,000, is appropriated to liquidate in part, unpaid ship operation subsidies for the calendar year 1968 and earlier calendar years the payment of which has been delayed by disagreements over the subsidy amounts due the carriers. $43,150,521.94 was disbursed on and between May 27, 1971 and June 11, 1971, when disbursement was arrested pending decision of the present motion, leaving about $36,850,-000 undisbursed, but how much of each segment comprises a part of the $40,300,-000 is not disclosed, perhaps is not quickly determinable. The entire $40,-300,000 appropriated to pay past-accrued but unliquidated subsidies is made up not of basic current-operating differential subsidies, which are generally disbursed as earned more or less currently to the extent of about 90% to 95% of the amount ultimately determined to be due, but of the held-back amounts consisting of balance-amounts due only when finally determined and agreed upon between carrier and Administration. The Secretary of the Maritime Subsidy Board avers without contradiction that of the $43,150,521.94 already disbursed $9,819,000 is the amount paid to the defendant AGAFBO carriers as past-accrued operating subsidies due for the whole of the two calendar years 1965 and 1966 which, together, include the eleven months of the accused rate-reduction. Eleven twenty-fourths of that total is somewhat over $4,500,000. How much of the undisbursed $36,850,000 will become ascribable to past-accrued operating subsidies of the years 1965 and 1966 is not stated. The defendant carriers, it is said, have unpaid vouchers, still unaudited and unauthenticated, lodged with the Board in the aggregate amount of $62,702,765, all of which, if audited and allowed, could, self-evidently, not be paid out of the present appropriation.

The matter is urgent because the availability of the appropriated funds will end at June 30, 1971, and renewal of the appropriation would, it seems, have to await fresh budgetary and Congressional action.

Plaintiffs' central argument is that the present funds are not, within the meaning of the Court's decision, "current subsidy payments" (432 F.2d 137, at 140, col. 2) payment of which ought not be enjoined, but belong to the radically distinguishable class of "payments * * * during the violation" (417 F.2d 972, at 977; 432 F.2d at 140, col. 2), which, adventitiously, are found undisbursed and which, therefore, present afresh the, indeed, related but new question, Should the Administration be required to withhold payment of an amount which the Administration may ultimately determine should not be paid because of the command of 46 U.S.C. § 1227, second paragraph ("Section 810")?

Most of the reasons urged for an injunction are not matters that would warrant judicial interference with the Administration's discharge of its responsibilities under the law as spelled out in the earlier decisions of the Court of Appeals, and an injunction could not be granted under the earlier decisions but for a differentiating feature here presented. It may have lurked in earlier determinations, but if so it was not brought forward recognizably.

█ Plainly enough, the issue here is differentiable from that which the Court determined on the injunction appeal. The dispositive difference is that before any disbursement is made that manifestly raises a substantial question under Section 810 there must be a specific and advertent decision by the Administration to make, to detain pending further review, or to refuse the payment. It is not a payment of past history presenting the question of whether in the light of

all the circumstances the Administration should seek to recover money long since paid out and embedded in ship operations. The right to receive subsidy payments for the accused period is now directly in issue between the Administration and each affected carrier. The issue is whether, apart from the usually controlling earnings standards, etc., and in the light of the Commission's decision under 46 U.S.C. § 814 ("Section 15") and the Congressional command of Section 810, the payment is due and should be made automatically.

There is no distinct evidence that the matter of disbursement has been considered in the light of determining before disbursement the propriety of making a payment entitlement to which depends on the resolution of a policy decision to be made under Section 810. The Board's letter of June 8, 1971, to plaintiff Safir rather indicates the contrary, in part because the plaintiff Safir's peremptory telegram of May 28, 1971, dealt with the whole $80,000,000 and with withholding, as offset, to secure the payment of any recovery that might be directed in proceeding S-243. Yet the Court of Appeals decisions plainly required that no payment be made without a prior advertent and adequate dealing with the policy matters bearing on payability.

Seen in this perspective the duty of the Administration is forthwith to make a decision of record based on stated grounds either to make payment (absolutely or conditionally), to withhold payment pending review, or to refuse payment of so much of the undisbursed $36,849,478.06 appropriated by Public Law 92–18 of May 27, 1971, as represents payments to the defendant carriers in respect of past-accrued operating subsidies for the eleven month period March 31, 1965, to March 1, 1966.

In this analysis, which singles out for immediate rectification the apparent omission of an indispensable stage of judgmatical administrative action, the conventional standards for granting injunctive relief, viewed as an extraordinary equitable remedy, are largely if not entirely irrelevant.

It is, accordingly,

■ Ordered that the defendants Andrew Gibson, Acting Maritime Administrator, Maritime Administration, United States Department of Commerce, James S. Dawson, Jr., Secretary, Maritime Subsidy Board, Maritime Administration, United States Department of Commerce, and Maurice Stans, Secretary of Commerce of the United States, are enjoined from paying to American President Lines, Ltd., Prudential Lines, Inc. and Grace Line, Inc. (Now operating as "Prudential-Grace Lines, Inc.") and Farrell Lines, Inc., American Export Isbrandtsen Lines, Inc., Bloomfield Steamship Co., Lykes Bros. Steamship Company, Inc., Moore McCormack Lines, Inc., and United States Lines, Inc., so much of the undisbursed $36,849,478.06 appropriated by Public Law 92–18 of May 27, 1971, as represents payments to the defendant carriers in respect of past-accrued operating subsidies for the eleven month period March 31, 1965, to March 1, 1966, unless after a decision of record is made by the Maritime Administration on stated grounds to do so notwithstanding the determination of the Federal Maritime Commission of December 12, 1967, in Docket No. 65–13 under 46 U.S.C. §§ 814, 817, and the terms of 46 U.S.C. § 1227, or unless upon the taking of adequate stipulations and security measures for refunding that will assure that the issue whether the amounts should have been disbursed is determinable after payment exactly as if the whole decision-making process preceded the payment; and it is further

Ordered that plaintiff give security in the amount of $5,000 conditioned as required by Rule 65; and it is further

Ordered that the defendants' application for a stay is denied; and it is further

Ordered that plaintiffs motion for injunction is in all other respects denied; and it is further

Ordered that the denial of injunction, as set forth in the preceding decretal-paragraph, is stayed until 2:00 P.M. June 24, 1971, and the defendant public officers are directed until then to continue the present voluntary stay of disbursements to the defendant carriers from the appropriated funds.